1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

LYNETTE CORBETT,

8

Petitioner,

9

v.

10

ISRAEL JACQUEZ,

11

Respondent.

CASE NO. 2:19-cv-00531-MJP-BAT

**REPORT AND
RECOMMENDATION**

12

13

14

15

16

17

18

19

20

        Petitioner Lynette Corbett is currently serving her sentence at the SeaTac Federal

Detention Center, with a projected release dated of July 21, 2019.  Dkt. 3, p. 3; Dkt. 42. Ms.

Corbett requests the Court to issue an order: (1) directing the Bureau of Prisons ("BOP") to

recalculate her good time credits under the First Step Act of 2018, which amended 18 U.S.C. §

3624(b) and permits federal inmates to earn up to 54 days of good time credit for each year of

the sentence imposed, and (2) declaring that this new calculation governs her release date. *See*

Dkt. 3, p. 5. If the requested relief is granted, Ms. Corbett contends she would be entitled to an

additional 14 days of good time credit and her release date would be July 7, 2019. *Id.*, p. 3.

21

22

23

        The government contends Ms. Corbett's petition is premature and unripe as the provision

of the First Step Act under which Ms. Corbett seeks relief has not yet taken effect and will not

take effect until "the date that the Attorney General completes and releases the risk and needs

assessment system." Dkt. 6, pp. 3-4. Other district courts that have considered petitions alleging

REPORT AND RECOMMENDATION - 1

1   claims similar to Ms. Corbett's, have denied relief because the amendment has not yet taken

2   effect. *See* Dkt. 6, pp. 4-5 (and cases cited therein). The government also contends relief is not

3   appropriate as Ms. Corbett failed to exhaust her administrative remedies. *Id*., p. 6.

4       Ms. Corbett's contention that the 54 days of good time credit an inmate may earn under

5   the First Step Act is unrelated to the completion of the risk and needs assessment system, has

6   merit.  However, the Court is not in a position to provide the relief Ms. Corbett requests where

7   the language of the First Step Act delays implementation of the 54 days of good time credit, and

8   where there is nothing establishing Congress intended to grant inmates 54 days of good time

9   upon the First Step Act's effective date of December 21, 2018. The undersigned thus

10  recommends dismissal of Ms. Corbett's petition because the provision of the First Step Act

11  under which she seeks relief has not yet taken effect, but does not recommend dismissal on the

12  grounds that her petition was brought prematurely or for failure to exhaust.

13  **BACKGROUND**

14  **A.**    **Ms. Corbett's Term of Imprisonment**

15      Lisa Corbett pleaded guilty in the District of Arizona to one count of conspiracy to

16  import methamphetamine in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(2)(H), and 963.

17  *See United States v. Corbett*, 4:17-cr-01728-TUC-RM, Dkt. 66. For this offense, she received a

18  twenty-four month prison sentence followed by four years of supervised release. *Id*. at Dkt. 102

19  (therein). She is currently serving this sentence at the Sea-Tac Federal Detention Center and has

20  a projected release date of July 21, 2019. Dkt. 6, p. 2.

21      On April 16, 2019, Ms. Corbett filed this habeas petition, alleging that she is being

22  unlawfully deprived of good conduct credits because the BOP has not recalculated the

23  application of such credits to her sentence in accordance with the First Step Act. Dkt. 3.

REPORT AND RECOMMENDATION - 2

1    Ms. Corbett's habeas petition is one of a growing number of § 2241 habeas petitions

2   recently filed by federal prisoners seeking release prior to July 19, 2019.[1] In *Johnston v. Jacquez,*

3   C19-550 JLR-BAT (alleging release date of April 29, 2019), the Court requested submission of

4   additional briefing and specifically requested the parties to address: (1) why the Court cannot

5   grant the relief requested when the original congressional intent of 18 U.S.C. § 3624(b) was to

6   grant a prisoner serving a sentence of more than one year, good time credits of 54 days per year;

7   (2) whether petitioner is excused from exhausting his administrative remedies; (3) whether the

8   "risk and needs assessment" of Section 101(a) of the First Step Act is relevant to the BOP's

9   calculation of good time credits; and (4) whether the Court may make factual findings to

10  determine if petitioner "has displayed exemplary compliance with institutional disciplinary

11  regulations" under 18 U.S.C. § 3624(b)(1). Dkt. 5, p. 2 in Case No. C19-550. In addition to

12  considering the parties' briefs in that case (Dkts. 6, 7), the Court heard oral argument on May 20,

13  2019 (Dkt. 9), and considered the Statement of Supplemental Authorities (Dkt. 11) filed by the

14  Federal Public Defender.

15    The Court takes judicial notice of the arguments and materials submitted by the United

16  States Attorney and Federal Public Defender's Offices regarding application of the First Step Act

17  in the *Johnston* case. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal

18  citation omitted) (judicial notice is appropriate for "undisputed matters of public record,

19  including documents on file in federal or state courts."); *see also Bennett v. Medtronic, Inc.*, 285

20

21  [1] *See e.g., Turner v. Jacquez*, C19-545 JCC-BAT (alleging release date of May 19, 2019); *Acedo v. Jacquez*, C19-529 RSM-MLP (alleging release date of July 7, 2019); *Ephrem v. Jacquez*, C19-534 RAJ-BAT (alleging release date of September 30, 2019); *Garcia-Orante v. Jacquez*, C19-536 RAJ-MLP (alleging release date of June 2, 2019); *Rigney v. Jacquez*, C19-548 RSL-MLP (alleging release date of May 30, 2019); and *Soundingsides v. Jacquez*, C19-544 JCC-MLP (alleging release date of June 20, 2019); *Johnston v. Jacquez*, C19-550 JLR-BAT (alleging release date of April 29, 2019).

REPORT AND RECOMMENDATION - 3

F.3d 801, 803 n.2 (9th Cir. 2002) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.")

**B.    History and Enactment of the First Step Act**

Under federal statutes, a term of imprisonment is satisfied through actual time in custody plus good time credits. 18 U.S.C. § 3624(a) and (b). The Sentencing Reform Act of 1984 eliminated the parole system and sharply cut back on the rate at which federal prisoners could earn good time credit, providing in § 3624(b) that prisoners could receive "credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment." The BOP calculated the good conduct earned based on actual time served in prison, not the length of the imposed prison sentence. *Barber v. Thomas*, 560 U.S. 474, 476-79 (2010). This resulted in prisoners effectively earning 47 days per year of good conduct credit instead of a full 54 days, because a prisoner is unable to earn a full year's worth of good credit in his final year of incarceration assuming it is a partial year of confinement. *Id.* The Ninth Circuit upheld this computation in *Pacheco-Camacho v. Hood*, 272 F.3d 1266, 1268 (9th Cir. 2001), and the Supreme Court approved the 47-day formula using time of actual custody. *Barber*, 560 U.S. at 492.

Shortly after *Barber*, the Department of Justice and the BOP supported legislation that would shift the 54-day calculation from actual time served to the sentence imposed, thereby increasing the maximum available good time credits from 47 to 54 days per year. *See* Hearing on the Oversight of the Federal Bureau of Prisons Before the Subcomm. on Crime, Terrorism, Homeland Security and Investigations of the H. Comm. on the Judiciary, 113th Cong., at 23-24

REPORT AND RECOMMENDATION - 4

1  (2013) (Statement of Charles E. Samuels, Jr. Director, Federal Bureau of Prisons).[2] The

2  provision was included in the First Step Act, which was signed into law on December 21, 2018.

3  Title I of the First Step Act, entitled "Recidivism Reduction," consists of seven sections.

4  The bulk of the title is set out in Section 101, which contains two subsections, each amending a

5  separate statute.

6  **Subsection 102(a)** amends 18 U.S.C. § 3621 to provide for implementation of a risk and

7  needs assessment system (referred to as the "System" within the statute) to be developed in

8  accordance with Section 101. The risk and needs assessment system shall (1) determine the

9  recidivism risk level (minimum, low, medium, or high) of each prisoner at intake; (2) assess and

10  determine the risk of violent or serious misconduct of each prisoner; (3) determine the type and

11  amount of programming for each prisoner and assign programming accordingly; (4) reassess

12  each prisoner periodically and adjust programming assignments accordingly; (5) reassign

13  prisoners to appropriate programs based on revised determinations; (6) determine when to

14  provide incentives and rewards for successful participation in programming or productive

15  activities; and (7) determine when a prisoner is ready to transfer into prerelease custody or

16  supervised release. Pub. L. 115-391, § 101, 132 Stat. 5194, 5195-5208 (2018) (promulgating 18

17  U.S.C. §§ 3631-3635); Staff of S. Comm. on the Judiciary, 115th Cong., S.3649, The First Step

18  Act Section by-Section Summary, at 3 (Nov. 15, 2018).

19  The Attorney General has 210 days after enactment (December 21, 2018) within which to

20  develop and publicly release the risk and needs assessment system. 132 Stat. at 5196

21  (promulgating 18 U.S.C. § 3632). Within 180 days after that, the Director of the BOP must

22

23
_____

[2] Available at https://www.govinfo.gov/content/pkg/CHRG-113hhrg82847/pdf/CHRG-113hhrg82847.pdf, at 23-24.

1    assess each prisoner and begin to provide appropriate programming. 132 Stat. at 5208

2    (promulgating 18 U.S.C. § 3621(h)). There is a two-year "phase-in" for the BOP to make

3    programming available to all prisoners. 132 Stat. at 5209.

4        **Subsection 102(b)** makes two amendments to 18 U.S.C. § 3624. As relevant to Ms.

5    Corbett's petition, **Subsection 102(b)(1)** amends 18 U.S.C. § 3624(b)(1) to change the method

6    by which the BOP is to calculate good time credits (hereinafter, "the good time fix amendment"):

7        Section 3624 of title 18, United States Code, is amended—

8        (A) in subsection (b)(1)—

9        (i)  by striking "', beyond the time served, of up to 54 days at the end of each year
10       of the prisoner's term of imprisonment, beginning at the end of the first year of
         the term,'' and inserting ''of up to 54 days for each year of the prisoner's sentence
11       imposed by the court,''; and

12       (ii)  by striking ''credit for the last year or portion of a year of the term of
         imprisonment shall be prorated and credited with in the last six weeks of the
13       sentence'' and inserting ''credit for the last year of a term of imprisonment shall
         be credited on the first day of the last year of the term of imprisonment[.]''

14   § 102(b)(1)(A), 132 Stat. at 5210. The Senate's Section-by-Section Report describes the intent of

15   these amendments:

16       Amends Section 3624 of title 18 of the U.S. Code to clarify congressional intent
         behind good time credit, which is earned for "exemplary compliance with
17       institutional disciplinary regulations," to ensure that a prisoner who is serving a
         term of imprisonment of more than 1 year may receive good time credit of 54
18       days per year toward the service of the prisoner's sentence. Also establishes
         eligibility for prerelease custody or supervised release for risk and needs
19       assessment system participants. Allows such eligible prisoners to be placed in
         home confinement or residential reentry centers, subject to the conditions required
20       by the Act and the BOP Director, or transferred to begin a term of supervised
         release; a violation of the conditions of prerelease custody may result in
21       revocation and require the violator to return to prison. Requires the Attorney
         General, in consultation with the Assistant Director for the Office of Probation
22       and Pretrial Services, to issue guidelines for BOP to use in determining the
         appropriate type of prerelease custody or supervised release and level of
23       supervision required, as well as consequences for violations of prerelease custody
         conditions. Requires the BOP Director to enter into agreements with the United

States Probation and Pretrial Services to supervise prisoners placed in home confinement and ensure that there is sufficient prerelease custody capacity to accommodate all eligible prisoners. Additionally, allows prisoners to receive mentoring services from a person that provided those services to the prisoner while incarcerated, absent a significant security risk.

*Clarifies that the amendments in this section related to prerelease custody shall take effect on the date that the Attorney General completes and releases the new risk and needs assessment system*, and apply with respect to offenses committed before, on, or after the date of enactment of the Act, except with respect to offenses committed before November 1, 1987 (which are subject to federal parole).

The First Step Act Section-by-Section Summary, at 3 (emphasis added).

Ms. Corbett contends the language italicized above, delays implementation of *only* those provisions of Subsection 102 relating to prerelease custody and which are directly dependent on the new risk and needs assessment system (such as new Subsection 102(g)[3]), but *does not* delay implementation of the good time fix amendment contained in Subsection 102(b)(1). The government contends the plain language of the First Step Act establishes that *all amendments made by Subsection 102*, which includes the good time fix amendment, do not take effect until the Attorney General releases the risk and needs assessment system, which has not yet been completed and is not required to be completed until July 19, 2019.

Subsection 102(b)(2) contains the effective date language applicable to Subsection 102:

EFFECTIVE DATE − The *amendments made by this subsection* shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system under subchapter D of chapter 229 of Title 18, United States Code, as added by Section 101(a) of this Act.

See Pub. L. No. 115-015, 132 Stat. 015 § 102(b)(2) (2018) (emphasis added).

---

[3] As part of the earned time credit system, Section 102 also adds Subsection (g) to 18 U.S.C. § 3624. § 102(b)(1)(B), 132 Stat. at 5210-13. Under that provision, the BOP can place an "eligible prisoner" who has earned time credits equal to the time remaining on his or her sentence in prerelease custody (home confinement or residential reentry center) or transfer the prisoner to supervised release up to 12 months early.

REPORT AND RECOMMENDATION - 7

Virtually every district court that has considered habeas petitions similar to the one brought here, has interpreted the "effective date" provision of Subsection 102(b)(2) to preclude relief under the good time fix amendment because that amendment has not yet taken effect. *See* Dkt. 6 at 5 (citing *Jeffrey Crittendon v. Warden White*, 19-cv-669, 2019 WL 1896501 (M.D. Pa. April 29, 2019); *United States v. Marc Yates*, 15-40063-01-DDC, 2019 WL 1779773 (D. Kan. Apr. 23, 2019); *Rufino Munoz v. United States*, 19-cv-324-O, 2019 WL 1778682 (N.D. Tex. Apr. 23, 2019); *McCullough v. Bureau of Prisons*, 19-cv-639-RMG, 2019 WL 1767393 (S.D. S.C. Apr. 22, 2019); *United States v. Landry*, No. 3:18-cr-5002-RBL, slip op. at *1 (W.D. Wash. Apr. 18, 2019) (denial of petition and motion for reconsideration based on the statute's plain language in delaying the amendment); *Greene v. Underwood*, No. 4:19-cv-160-Y, 2019 WL 1531673 (N.D. Tex. Apr. 9, 2019); *Matthews v. Williams*, No. 4:19-cv-518, 2019 WL 1639776 (N.D. Ohio Apr. 16, 2019); *United States v. Scouten*, No. 13-cr-20S, 2019 WL 1596881 (W.D.N.Y. Apr. 15, 2019); *United States v. Parrett*, No. 01-cr-168-JPS, 2019 WL 1574815 (E.D. Wis. Apr. 11, 2019); *Roy v. Bureau of Prisons*, No. 2:19-cv-59-RMP, 2019 WL 1441622 (E.D. Wash. Apr. 1, 2019); *Rizzolo v. Puentes*, 2019 WL 1229772 (E.D. Ca. Mar. 15, 2019); *Darren Bottinelli, et al. v. Josias Salazar, et al.*, No. 3:19-cv-256-MO, slip op. at *2-3 (D. Oregon Mar. 13, 2019) (appeal pending, *see Darren Bottinelli, et al. v. Salazar*, C.A. No. 19-35201); *Sheppard v. Quintana*, No. 5:19-cv-084-DCR, 2019 WL 1103391, at *2 (E.D. Ky. Mar. 8, 2019); *Sennett v. Quintana*, No. 5:19-cv-085-JMH, 2019 WL 1085173, at *2 (E.D. Ky. Mar. 7, 2019)).

## DISCUSSION

**A.    Constitutional and Prudential Ripeness**

The government contends that, "[b]ecause the amendment is not yet effective, any claim that the Bureau of Prisons has failed to calculate sentence credit according to its terms, is not yet

REPORT AND RECOMMENDATION - 8

ripe." Dkt. 6 at 3. Ms. Corbett contends that, because the good time fix amendment should have taken effect upon the enactment of the First Step Act on December 21, 2018, she should be released on July 7, 2019. Thus, two weeks of her liberty are at stake and her habeas petition raises neither a hypothetical nor an abstract disagreement. Dkt. 7 at 2. Ms. Corbett argues further, "[t]his is not a claim about whether the BOP has properly counted days. This is a claim about the effective date of the good-time provision, and whether the BOP should recalculate Ms. Corbett's release date pursuant to the good-time fix…." *Id.* Additionally, because Ms. Corbett's release date (as has been established by the BOP) is July 21, 2019, waiting until July 19, 2019 (when the government contends the good time fix amendment is effective), would make judicial relief no more than a theoretical opportunity. *Id.*

Federal courts are limited to deciding "cases" and "controversies." U.S. Const. art. III, § 2. One component of the "case or controversy" requirement is that a claim must be ripe for review. *Bova v. City of Medford*, 564 F.3d 1093, 1095-96 (9th Cir. 2009). "[R]ipeness addresses when litigation may occur[,]" *Lee v. Oregon*, 107 F.3d 1382, 1387 (9th Cir. 1997), and is "designed to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, (1967)). It has two components, "constitutional ripeness and prudential ripeness." *Id*. To determine constitutional ripeness, a court must examine "whether the issues presented are definite and concrete, not hypothetical or abstract." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (internal citations omitted); *In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009). To determine prudential ripeness, the Supreme Court has developed a two-part test: "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court

REPORT AND RECOMMENDATION - 9

1    consideration." *Id*. at 1006.

2          As previously mentioned, virtually every district court that has considered petitions

3    alleging the claim as that alleged here by Ms. Corbett have denied the petitions as meritless

4    because Subsection 102(b)(1) has not yet taken effect. *See*, Dkt. 6 at 5, *supra*; *see also*, *United*

5    *States v. Landry*, No. 3:18-cr-5002-RBL, slip op. at *2 (W.D. Wash. Apr. 18, 2019) ([b]ecause

6    the express language of the statute unequivocally delays its effective date, the issue of whether

7    Landry's sentence is correctly calculated pursuant to the First Step Act's amendment is not

8    "constitutionally ripe or "definite and concrete.")  As discussed in more detail below, the

9    undersigned also agrees that Ms. Corbett's petition should be denied on the merits because

10    Subsection 102(b)(1) has not yet taken effect. However, the heart of Ms. Corbett's habeas

11    petition is that the good time fix amendment should have taken effect immediately and had the

12    Court agreed with her position, she would have been entitled to release two weeks earlier, on

13    July 7, 2019. Thus, the petition is not a "hypothetical or abstract" disagreement for Ms. Corbett.

14    In addition, Ms. Corbett's release date has already been established by the BOP as July 21, 2019.

15    Therefore, forcing her to wait until after July 19, 2019, would essentially render her petition

16    moot. For these reasons, the undersigned concludes that her petition is not unripe and does not

17    recommend dismissal on that basis.

18    **B.**    **Exhaustion**

19          The BOP has an established Administrative Remedy Process for inmates wanting to

20    challenge their sentence calculations before proceeding to court. *See* 28 C.F.R. § 542.10 *et seq.*

21    The inmate must first seek informal resolution of the issue through the institution's staff. 28

22    C.F.R. § 542.13. If dissatisfied with the informal response, the inmate must then formally

23    complain to the institution's warden. *Id*.; 28 C.F.R. § 542.14. If the warden denies the inmate a

remedy, the inmate may appeal the denial of relief to the Regional Director of the region in which he is confined. 28 C.F.R. § 542.15(a). Finally, if the Regional Director denies relief, the inmate may appeal to the BOP's General Counsel in Washington, D.C. *Id*. Exhaustion of administrative remedies does not occur until the inmate has requested and been denied relief at all levels of the BOP.

The BOP has notified prisoners that the retroactive amendment to the good time credit statute "is not effective immediately." *See*, *Johnston v. Jacquez*, Case No. 19-550-JLR-BAT, Dkt. 9, pp. 6-7; *see also* Dkt. 11-1 therein (BOP Notice to Inmate Population). In its Notice, the BOP cites to the "EFFECTIVE DATE" of Section 102(b)(2), and states:

> We know that inmates and their families are particularly interested in the changes regarding good conduct time. The law will allow BOP *in the future* to apply 54 days of credit for every year a sentence was imposed, which is a change to the prior law.

> While this change may result in additional credit for inmates *in the future*, it is not effective immediately not is it applicable to all inmates.

*Id.* (emphasis added).

Exhaustion is excused where 1) the prisoner faces irreparable harm from delay incident to pursuing administrative remedies; 2) there is some doubt whether the agency was empowered to render relief; or 3) the agency has indicated predetermination of the issue, rendering exhaustion futile. *Madigan v. McCarthy*, 503 U.S. 140, 146–49 (1992), *superseded on other grounds*, 42 U.S.C. § 1997(e).

The Court recognizes that the exhaustion requirement is eminently reasonable where the DOJ and BOP are in the process of implementing a new statute and Congress has given the Executive Branch time for this implementation. Requiring exhaustion after the good time fix amendment has been implemented will allow the BOP to develop a factual record and apply its

REPORT AND RECOMMENDATION - 11

expertise before subjecting claims to challenges in the federal courts. Under the circumstances of this case however, requiring Ms. Corbett to exhaust is an exercise in futility when the BOP has taken the position, and notified all of its inmate population, that the retroactive amendment to the good time credit statute "is not effective immediately." At oral argument in the *Johnston* case, the government explained that if Subsection 102(b) is effective immediately, exhaustion would be required, but conceded "there may be little purpose in exhausting the administrative remedies" if the statute is not yet effective. *See*, Dkt. 9, p. 19 in *Johnston v. Jacquez*, Case No. 19-550-JLR-BAT.

Because the BOP predetermined the issue and made it clear that any request Ms. Corbett makes to the BOP for calculation of good time credits under the amended statute will be denied, there is no available administrative remedy. Under these circumstances, it would be futile for Ms. Corbett to exhaust her administrative remedies and the undersigned does not recommend dismissal on this basis.

**C.    Equal Protection/Due Process**

Ms. Corbett contends she is being denied equal protection of the law by the delayed implementation of the good time fix amendment. The First Step Act is clearly retroactive as it states that the good time fix amendment applies equally to all inmates, whether they offended "before, on, or after the date of enactment" of the Act. However, Ms. Corbett points out that the new computation does not apply to all inmates because there are many inmates, like herself, who have release dates between December 21, 2018, and July 19, 2019. Ms. Corbett argues that this "arbitrarily-comprised group" will serve more time than other inmates because the BOP continues to apply the calculation method presently in existence until the good time fix amendment becomes effective on July 19, 2019.

REPORT AND RECOMMENDATION - 12

"[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity and must be upheld if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Aleman v. Glickman*, 217 F.3d 1191, 1200 (9th Cir. 2000) (citation omitted). The rational basis test sets a low bar. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 903 (9th Cir. 2018). The court "asks whether 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Fowler Packing Company, Inc. v. Lanier*, 844 F.3d 809, 815 (9th Cir. 2016) (quoting *F.C.C. v. Beach Comms., Inc.*, 508 U.S. 307, 313 (1993)).

Here, the delayed application of the good time fix amendment does not target a "suspect class," which is defined by an immutable characteristic such as race, national origin, and gender. *See Ball v. Massanari*, 254 F.3d 817, 824 (9th Cir. 2001). Being a "prisoner" or "convicted person" also fails to constitute a suspect class for equal protection purposes. *United States v. Whitlock*, 639 F.3d 935, 941 (9th Cir. 2011). Additionally, a prisoner possesses no constitutional right to release before his valid sentence expires. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979).

Contrary to Ms. Corbett's contention,[4] she is also not suffering the wrongful deprivation of good time credits because the "credit toward service for satisfactory behavior" contained in the good time fix amendment merely authorizes the BOP to offer prisoners the benefit of a

---

[4] The cases on which Ms. Corbett relies (*see* Dkt. 7 at 10 (citing *Weaver v. Graham*, 450 U.S. 24, 33–34 (1981) (good time credits protected against ex post facto reductions); *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (compliance with due process required before depriving prisoners of good time credits); *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991) (BOP regulations codify constitutionally-required protection against deprivation of good time credits without due process of law) (citing *Ponte v. Real*, 471 U.S. 491, 495 (1985)), emphasize a prisoner's right to due process before earned statutory good time credits can be taken from her by a retroactive law or regulation, or as the result of a disciplinary punishment – here, the additional good time credits do not exist until the amendment is effective.

REPORT AND RECOMMENDATION - 13

reduced sentence in exchange for good behavior based on the new 57-day formula. *See*, *e.g.*, *Perez v. Zenk*, No. 04-CV-5069 (CBA), 2005 WL 990696, at *4 (E.D.N.Y. Apr. 11, 2005) (BOP's policy of calculating good time credits is subject only to rational basis review); *see Molina v. Underwood*, No. 3:19-cv-641-K-BN, 2019 WL 1533444, at *2 (N.D. Tex. Mar. 19, 2019) (summarily dismissing § 2241 petition seeking immediate recalculation of good-time credit under the First Step Act and rejecting equal protection and due process claims).

The delayed implementation of the good time fix amendment will in fact benefit those prisoners whose 47-day release dates fall after July 19, 2019. For example, a prisoner with a release date of July 20, 2019 (under the old 47-day calculation) would have his release date accelerated by one day, whereas a prisoner with a release date of 70 days from July 19, 2019, could be released on the same day as the prisoner with the release date of July 20, 2019. However, the fact that the new good time fix will benefit some groups of inmates and not others, is not a basis for invalidation. In fact, the rational basis standard does not require that Congress choose the best means of advancing its goals or that the means chosen is the best fit. *See*, *Vermouth v. Corrothers*, 827 F.2d 599, 603 (9th Cir.1987); *Mauro v. Arpaio*, 188 F.3d 1054, 1059–60 (9th Cir.1999). *See also*, *United States v. Navarro*, 800 F.3d 1104, 1110-14 (9th Cir. 2015) (rejecting arguments that delayed implementation of Amendments 782 and 788 to the Sentencing Guidelines violated the Due Process and Equal Protection Clauses because delay provided necessary time for court review, accommodated the need to arrange for transition and reentry programs, and allowed affected agencies to prepare for increased workload).

The delayed implementation of the good time fix amendment also "bears a rational relation to [the] legitimate end" of allowing "the Executive Branch time for this implementation. It is reasonable to permit that implementation to occur[.]" *See Shah v. Hartman*, No. 1:18-cv-

REPORT AND RECOMMENDATION - 14

7990, slip op. at *5 (N.D. Ill. Jan. 3, 2019), available at http://www.lisa-legalinfo.com/wp-content/uploads/2019/01/ Order -January-3-2019.pdf. Congress rationally chose to give the BOP a reasonable time to develop and implement through notice-and-comment rulemaking a new approach to awarding credit not only for good conduct, but also for successful completion of recidivism reduction programming under 18 U.S.C. § 3632(d)(4), and to complete the planning necessary to assist individuals with the reentry process.

Accordingly, the Court concludes that Ms. Corbett's claim that the delayed implementation violates her Due Process and Equal Protection rights should be denied.

**D.      Statutory Construction of First Step Act**

"'In the absence of an express provision in the statute itself, an act takes effect on the date of its enactment.'" *United States v. Shaffer*, 789 F.2d 682, 686 (9th Cir. 1986) (quoting *United States v. Clizer*, 464 F.2d 121, 123 n.2 (9th Cir. 1972)). "'The preeminent canon of statutory interpretation requires [the court] to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, [the court's] inquiry begins with the statutory text, and ends there as well if the text is unambiguous.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (quoting *McDonald v. Sun Oil Co.*, 548 F.3d 774, 780 (9th Cir. 2008)).

As previously noted, the good time fix amendment, is one of three subsections contained in Subsection 102(b). Subsection 102(b)(2), the "Effective Date" subsection, provides that "[t]he amendments made by this subsection shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system under subchapter D of chapter 229 of title 18, United States Code, as added by section 101(a) of this Act." This language is unambiguous. Subsection 102(b)(2) plainly states that the amendments contained in

REPORT AND RECOMMENDATION - 15

1   Section 102(b) (which includes the good time fix amendment), do not take effect until the

2   Attorney General releases the risk and needs assessment system, which is due on July 19, 2019.

3   Courts confronted with this same question have concluded that this effective date provision does

4   in fact, apply to the good time fix amendment. *See United States v. Murgia*, No. 3:10-cr-0076-

5   01-HRH, 2019 WL 2236067 (D. Alaska May 22, 2019) (citing *United States v. Richards*, Case

6   No. 3:05-cr-00185, 2019 WL 2008572, at *4 (M.D. Tenn. May 7, 2019) ("[a]lthough Richards

7   argues that the effective-date provision does not apply to the good-time fix, virtually every court

8   in the country confronted with the question has concluded that it does and that, as a result,

9   motions seeking relief under the [First Step Act] now are premature"); *United States v. Sirois*,

10  Case No. 1:11-cr-00206-JAW-2, 2019 WL 1923632, at *2 (D. Me. April 30, 2019) (citation

11  omitted) ("the good time credit provisions of the First Step Act are not yet effective" because

12  "Section 102(b)(2) of the Act specifically provides that the amendments made in subsection

13  102(b) of the Act take effect only when the Attorney General completes the 'risk and needs

14  assessment system' required by Section 101(a) of the Act"); *Crittendon v. White*, Case No. 1:19-

15  cv-669, 2019 WL 1896501, at *1 (M.D. Pa. April 29, 2019) (good time credit amendment does

16  "not take effect until the Attorney General completes the 'risk and needs assessment system'");

17  *United States v. Yates,* Case No. 15-40063-01-DDC, 2019 WL 1779773, at *3 (D. Kan. April 23,

18  2019) ("[c]ourts have concluded that the plain language of § 102 of the First Step Act mandates

19  the change to good-time credit calculations after the Attorney General releases the risk and needs

20  assessment system mandated by the Act"); *Matthews v. Williams*, 4:19CV518, 2019 WL

21  1639776, at *2 (N.D. Ohio, April 16, 2019) (citation omitted) ("[t]he First Step Act is explicit

22  about the effective date of the new good-time provisions[,]" which is on the date that "the

23  Attorney General completes and releases the risk and needs assessment system"); *United States*

REPORT AND RECOMMENDATION - 16

*v. Scouten*, Case No. 13-CR-20S, 2019 WL 1596881, at *1 (W.D.N.Y. April 15, 2019) (citation omitted) ("[b]y the plain terms of the Act, the provision is not effective until the Attorney General completes the risk and needs assessment system"); *Johnson v. Bureau of Prisons*, Case No. 4:19-cv-224-O, 2019 WL 1569360, at *1 (N.D. Tex. April 11, 2019) ("the good-time-credit change will not take effect until the attorney general completes the 'risk and needs assessment system' required to be completed within 210 days after the December 21, 2018 enactment, as provided by §§ 101(a) and 102(b)(2) of the [First Step Act] 2018"); *United States v. Parrett*, Case No. 01-CR-168-JPS, 2019 WL 1574815, at *1 (E.D. Wis. April 11, 2019) ("the Act's good-time provisions have not yet taken effect; before they do, the Attorney General must complete the 'risk and needs assessment system'"); *United States v. Powell*, Case No. 5:11-cr-75-JMH-1, 2019 WL 1521972, at *3 (E.D. Ky. April 8, 2019) (provision amending good time credit statute "has not yet taken effect"); *Roy v. United States Bureau of Prisons*, Case No. 2:19-CV-59-RMP, 2019 WL 1441622, at *1 (E.D. Wash. April 1, 2019) ("[t]he good-time provisions of the First Step Act ... did not become effective when the Act took effect on December 21, 2018")). *See also*, *United States v. Landry*, No. 3:18-cr-5002-RBL, slip op. at *1 (W.D. Wash. Apr. 18, 2019) (denial of petition and motion for reconsideration based on the statute's plain language in delaying the amendment).

As other petitioners before her have argued, Ms. Corbett contends it makes little sense to delay implementation of the good-time fix amendment because the BOP could begin calculating good time credit pursuant to the amendment immediately. While this may be technically correct, the Court must assume that Congress said what it meant and meant what it said. Here, Congress specifically stated that the Section 102(b) amendments would not take effect until the Attorney General completes the risk and needs assessment system, which he has until July 19, 2019 to

REPORT AND RECOMMENDATION - 17

1    complete. There is nothing in the statute, in the Constitution, or in the Congressional record to

2    the contrary.

3         Ms. Corbett also urges the Court to consider the totality of the circumstances to construe

4    that the good time fix amendment is immediately effective because Congress clearly intended to

5    rectify the earlier mistake resulting in the BOP's erroneous good time credit calculation. Ms.

6    Corbett analogizes the circumstances here to those in *Gozlon-Peretz*, where the delayed effective

7    date of the supervised release provisions of the Sentencing Reform Act gave way to the

8    congressional intention to fill a gap in the sentencing scheme. *See Gozlon-Peretz v. United*

9    *States*, 498 U.S. 395, 405 (1991) ("Given the apparent purpose of the legislation to rectify an

10   earlier mistake, it seems unlikely that Congress intended the effective date to be any time other

11   than the date of enactment."). Ms. Corbett urges the Court to correct the "drafting inadvertence"

12   of Congress that deprives well-behaved prisoners of full good time credits under § 3624(b). The

13   Court cannot do so.

14        The plain language of the good time fix amendment makes clear that Congress intended

15   to reject the BOP's prior implementation of good conduct credit based on actual time served and

16   to adopt the contrary position that good time credit is earned based on the imposed sentence

17   length. There is no question that Congress is instructing that federal prisoners are eligible to earn

18   a full 54 days of good conduct credit per year, not the 47 days that resulted under the BOP's

19   policy. However, there is nothing in the record, in the statute itself, or in the Congressional

20   record to indicate that Congress intended the effective date to be other than what is specifically

21   stated in Subsection 102(b)(2). If Congress had wanted Subsection 102(b) to be effective on the

22   date of enactment, it could have made it so by simply not placing the good time fix amendment

23   within Section 102, by specifically stating that it was to be immediately effective, or by not

REPORT AND RECOMMENDATION - 18

1    stating any effective date (as it did elsewhere within the Act) so that by default, the subsection

2    would be effective on the date of enactment. *See*, *e.g.*, *Gozlon-Peretz*, 498 U.S. at 404 ("[W]here

3    Congress includes particular language in one section of a statute but omits it in another section of

4    the same Act, it is generally presumed that Congress acts intentionally and purposely in the

5    disparate inclusion or exclusion.") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

6          Congress' intent regarding the effective date of the good time fix amendment is

7    highlighted by the manner in which it treated other amendments of the First Step Act. Congress

8    for instance, implemented a different effective date for Section 603, which amended 18 U.S.C. §

9    3582. That amendment addresses "compassionate" early release, and unlike the new good time

10   fix amendment, the new compassionate early release amendment contained no delay in

11   application language and thus, became effective on December 21, 2018.

12         Ms. Corbett also argues that the delay in implementation does not logically apply to her

13   situation as the BOP has already calculated her release date, which includes good time credit

14   applied by the BOP under the old policy. Therefore, if the good time fix amendment is not

15   immediately effective, Ms. Corbett could be detained beyond her projected July 21, 2019 release

16   date because the BOP has until July 19, 2019 to develop and release a risk and needs system.

17   This argument raises a theoretical concern that does not appear to track with Ms. Corbett's

18   situation. The government has not argued that under the First Step Act Ms. Corbett will be held

19   beyond her current projected release date nor has she presented anything showing that the BOP

20   plans on altering her current release date.

21         The Court is not unsympathetic to Ms. Corbett's argument that she would be entitled to

22   an additional two weeks' of good time credits, but the Court cannot rewrite the amendment to

23   require immediate implementation when Congress declined to do so. To uphold Ms. Corbett's

REPORT AND RECOMMENDATION - 19

position, the Court would have to ignore the plain language of Subsection 102(b)(2), which provides that the amendments made in subsection 102(b) of the Act take effect only when the Attorney General completes the "risk and needs assessment system" required by Section 101(a) of the Act. This Court has no power to rewrite or disregard the statute in order to accommodate Ms. Corbett's situation. There is no doubt that Congress can postpone the date on which a law, or part of a law, is to become effective. *See Gozlon-Peretz*, 498 U.S. at 405-08. And where Congress has provided an express effective date for a statutory provision, that date controls. *Id.* at 403-404.

Section 102(b)(2) is clear that it covers implementation of the good time fix amendment because it applies to the implementation of *all* of Section 102(b). In addition, and contrary to Ms. Corbett's position, the risk and needs assessment system does involve sentence calculation to the extent that the system must "determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with § 3624." First Step Act of 12018, Pub. L. No. 115-015, 132 Stat. 015 § 101(a) (2018).

Accordingly, the undersigned recommends that Ms. Corbett's habeas petition seeking recalculation of her good time credits under the First Step Act be **denied**.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **June 28, 2019.** The Clerk should note the matter for **July 2, 2019**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days

after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter will then be ready for the Court's consideration on the date the response is due.  Objections and responses shall not exceed seven (7) pages.  The failure to timely object may affect the right to appeal.

DATED this 7th day of June, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 21